ELKHART WATERSPORTS ALLIANCE, INC,

        Plaintiff,

                              Case No. 26-cv-0682

v.

Village of Elkhart Lake,
Lynn Shovan, John Schott,
Geoff Bray, Terri Knowles,
Paul Rudnick, Mark Landgraf,
and Mike Wolf

        Defendants

---

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Village of Elkhart Lake, Lynn Shovan, John Schott, Terri Knowles, Paul Rudnick, Mark Landgraf, Mike Wolf, and Geoff Bray, by their attorneys, Municipal Law & Litigation Group, S.C., submit this Brief in Support of their Motion to Dismiss the Amended Complaint.

### FACTUAL BACKGROUND

**I.**    **Facts Alleged in the Original Complaint**

This case centers around the Village of Elkhart Lake Ordinance No.669, which was enacted, through the Village Board of Trustees, on November 3, 2025. *Id*. at 24. The Ordinance states, in part:

**Section 2. Certain Artificial Wake Enhancement Prohibited.**

**(1) Prohibited Equipment.** No person may use or employ ballast tanks, ballast bags or fins to cause a boat to operate in a bow high manner, or which increases or enhances a boat's wake.

**(2) Prohibited Operation.** No person may operate a boat in an artificially bow-high manner having the effect of increasing the boat's wake. Such prohibited operation shall include wake enhancement by use of ballast tanks, or ballast bags or fins, or continuous operation at transition speed (the speed below planning speed in which a boat is operating in plowing mode). For the purpose of this provision, "continuous operation" shall mean the operation that is not acceleration for the purpose of achieving a state of planning."

**(3) Certain Operations Excluded.** In no event shall any of the following operations be deemed a violation of the Ordinance, provided such operations do not use or employ ballast tanks, ballast bags or wake enhancing fins: i) water skiing, ii) tubing, iii) wake boarding or employing a tow rope; iv) brief transition operation to empty a boat of bilge water, or v) brief transition operation of a boat accelerating into a planing condition.

Orig. Compl. Ex. A.

Plaintiff, Elkhart Watersport Alliance, Inc. (EWA), is a boating organization in Wisconsin that is purportedly comprised primarily of riparian landowners who own boats and/or property on Elkhart Lake. Orig. Compl. ¶¶ 3-5. While not individually identified, EWA alleges to have membership consisting of 14 individuals of varying backgrounds: EWA's members include people of all ages and abilities. Some members skew more elderly, while others are younger. All members have families with children, grandchildren, mothers, fathers, or other relatives that recreate on Elkhart Lake through wake surfing. *Id*.¶¶ 56, 61. Some of its members also have disabilities – though such disabilities are undefined. *Id*. ¶ 61. One member, Member A, has two minor children with disabilities who wakesurf. *Id*. ¶¶ 69-70.

EWA brought this action against the Village of Elkhart Lake and its Trustees seeking declaratory judgment that a wakesurfing ordinance in Elkhart Lake is illegal and unconstitutional and further requesting injunctive relief. *Id*. at ¶ 1-2.

The Original Complaint asserted that none of the EWA members had been cited for using their wakeboats, and that they intended to continue using their wakeboats for wakesurfing despite the Ordinance. Compl. ¶¶ 59-60.

2

EWA asserts the Ordinance represents the Village's attempt to ban wakeboats completely on Elkhart Lake, *id*. at ¶ ¶ 27-35, and questions the extent of the Village Board's discussion of the Ordinance prior to its passage. *Id*. at ¶¶36-48. EWA asserts that the Village's Ordinance is not supported by scientific evidence and notes that its own Elkhart Wake Study contradicted the scope of the Ordinance. *Id*. at ¶¶ 79-85. EWA also notes that the Village Board declined other alternative Ordinances regulating wakesurfing on Elkhart Lake. *Id*. at ¶¶ 97-113.

Additionally, EWA asserts that wakesurfing is an "accessible" sport and that veterans, individuals with disabilities, and children engage in wakesurfing, *id*.at ¶¶ 49-55, and alleges that wake surfing has occurred on Elkhart Lake "for decades" and is not the cause of lake degradation. *Id*. at ¶¶ 89-94.

The Original Complaint brought fifteen causes of action. Five of those causes of action were under federal law: Count III declaratory relief that the ordinance is unconstitutionally vague and overbroad in violation of the Fourteenth Amendment; Count IV violation of Title II of the Americans with Disabilities Act; Count V declaratory relief that the ordinance violates substantive due process in violation of the Fourteenth Amendment; and Count XI and Count XII that the ordinance constitutes a per se regulatory taking and a regulatory taking in violation of the Fifth Amendment. The remaining causes of action are under Wisconsin law.

## II.    Amended Complaint

Following the Defendants filing a Motion to Dismiss, EWA filed an Amended Complaint. The Amended Complaint adds 12 pages and 63 paragraphs to EWA's, already long, Original Complaint. The parties and the causes of action remain the same.

The factual allegations set forth in the Amended Complaint repeat all of the prior allegations including, by example, allegations that the Ordinance is poorly drafted, lacking in reasonable legislative judgment and the Village Trustees acted arbitrarily by failing to adopt EWA's preferred "Compromise Ordinance" or otherwise failing to either keep wake boats unregulated like other motor boats and to regulate all boats equally.

Relevant to the federal claims challenged in this Motion to Dismiss, the Amended Complaint makes the following modifications:

The Amended Complaint identifies four members of EWA – Gregory McComis and Members A, B, and C. Amend. Compl. ¶¶ 63-77.  The Amended Complaint asserts these individuals have injuries that – while not alleged to be disabilities under the Americans with Disability Act – have limited their abilities to participate in some water sports on Elkhart Lake, although the allegations lack any further specifics. *Id*. For example, McComis "has had multiple procedures and treatments for back pain," Member A has two minor children with injuries, Member B has "back and knee issues," and Member C has "a series of health issues." Amend. Compl. ¶¶ 65, 69-70, 74, 77.

Additionally, the Amended Complaint asserts that one of EWA's members was stopped by the Village of Elkhart Lake Police in regard to the Ordinance. Amend. Compl. ¶ 192. The Amended Complaint reflects that the member denied using a ballast and was thus given only a warning notice for bow high towing of a wake boarder. *Id*. at 193. The warning indicated that future operation must be corrected. *Id*. at 195. The officer indicated that the boat had been operating in a bow high manner for over a minute but that the driver alleged he could still operate the boat safely. *Id*. at 198-99. The Amended Complaint also asserts that Gregory McComis received a phone call intended for an individual named "Gary" and from the Elkhart

Lake Police Department wherein the Department indicated they had been notified that "Gary's" boat had been reported for wake surfing. *Id*. at 205. The Amended Complaint also notes that the Village has posted signs reflecting the new Ordinance and that the Village has enforced other boating ordinances in the past. *Id*. at 210, 215.

With respect to the substantive due process claim, the Amended Complaint asserts the purported violation of a fundamental right – specifically, the right to travel. Amend. Compl. ¶ 230. The Amended Complaint also essentially cuts and pasts allegations that were previously alleged under the Original Complaint's Count V state law claim for declaratory relief under the substantive due process claim in the Amended Complaint. *Compare* Dkt. 1 Original Complaint ¶¶ 232-270 *to Dkt. 16* Amended Complaint ¶¶ *242-245, 253-257, 259-273, 281-296*.

As noted, the claims remain the same as those alleged in Original Complaint, to wit: Count III declaratory relief that the Ordinance is unconstitutionally vague and overbroad in violation of the Fourteenth Amendment (¶¶ 163-222), Count IV violation of Title II of the Americans with Disabilities Act (¶¶ 223-228), Count V declaratory relief the Ordinance violates substantive due process in violation of the Fourteenth Amendment (¶¶ 229-302) and Count XI and XII that the Ordinance constitutes a per se regulatory taking and a regulatory taking in violation of the Fifth Amendment (¶¶ 349-368). The remaining causes of action are asserted under Wisconsin law.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted should be granted if a complaint lacks a factual context sufficient to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007); *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 663-64 (2009) (holding that *Twombly's* plausibility standard applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 677. "Importantly, the Supreme Court's decisions in *Twombly* and *Iqbal* ushered in a requirement that civil pleadings demonstrate some merit or plausibility in complaint allegations to protect defendants from having to undergo costly discovery unless a substantial case is brought against them." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013); *see also Twombly*, 550 U.S. at 557 (a complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Rather, for a complaint to state a plausible claim for relief under *Twombly* and *Iqbal*, the complaint must include enough detail about what *each defendant* did to show a real possibility – and not just a guess – that the plaintiff might be able to prove *each element* of his claims after he has an opportunity to investigate them. *Twombly*, 550 U.S. at 555, 565-567. If allegations of a complaint give rise to an "obvious alternative [legitimate] explanation" for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement and must be dismissed. *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 557). In deciding a motion to dismiss, a court should disregard "legal conclusions and

conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

<u>**ARGUMENT**</u>

**I.** **EWA Lacks Standing, its Constitutional Claims are not Ripe for Review, and Future Amendments Would be Futile.**

Article III of the Constitution restricts the jurisdiction of federal courts to ongoing "cases or controversies." *Davis v. Federal Election Commission*, 554 U.S. 724, 732 (2008). To establish such jurisdiction, plaintiffs must show they have standing to bring a claim, that is (1) an injury in fact; (2) a sufficient casual connection between the injury and the conduct complained of; and (3) the likelihood that an injury may be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotations omitted). An "injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony v. Driehaus*, 573 U.S. 149, 158 (2014) (citations omitted). An injury must be "real," and not "abstract" but not necessarily tangible. *Groshek v. Time Warner Cable, Inc*. 865 F.3d 884, 886 (7th Cir. 2017).

EWA brings this action pre-enforcement; that is, none of its members have *actually* been subject to the regulation sought through the Village's Ordinance. In their Amended Complaint, they allege that one member has received a warning; however, none of EWA's members has been prosecuted under the Ordinance.

Further, EWA brings this action on behalf of its members, as opposed to on behalf of the organization. Amend. Compl. ¶ 3. To sue in a representative capacity, an entity must show that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

relief requested requires the participation of individual members in their lawsuit. *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 625 (7th Cir. 2019). Moreover, as the Supreme Court recently noted:

> Like an individual, *an organization may not establish standing simply based on the "intensity of the litigant's interest" or because of strong opposition to the government's conduct, ..."no matter how longstanding the interest and no matter how qualified the organization,"* …. A plaintiff must show "far more than simply a setback to the organization's abstract social interests." .… The plaintiff associations therefore cannot assert standing simply because they object to FDA's actions.
>
> The medical associations say that they have demonstrated something more here. They claim to have standing not based on their mere disagreement with FDA's policies, but based on their incurring costs to oppose FDA's actions. They say that FDA has "caused" the associations to conduct their own studies on mifepristone so that the associations can better inform their members and the public about mifepristone's risks. …They contend that FDA has "forced" the associations to "expend considerable time, energy, and resources" drafting citizen petitions to FDA, as well as engaging in public advocacy and public education. …And all of that has caused the associations to spend "considerable resources" to the detriment of other spending priorities. …
>
> *But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way.*

*FDA v. Alliance of Hippocratic Medicine*, 144 S.Ct. 1540, 1563 (2024) (emphasis added and citations omitted).

As with the Original Complaint, the Amended Complaint does not show EWA meets these standards. The Amended Complaint alleges that EWA is a boating organization comprised primarily of riparian landowners who own boats or property on Elkhart Lake. Amend. Compl. ¶¶ 4-5. But while the Amended Complaint contains some discussion of EWA's individual members, it falls short of establishing standing to sue as to each claim. As pled, the causes of action alleged in the Amended Complaint, most notably the takings claims, will require the participation of individual members to identify the property at issue as well as individualized expectations and valuations. Additionally, the specific contours of the right at issue in the substantive due process

claim may also vary depending on the individual member. Similarly, it is alleged that *some* of the membership has disabilities impacted by the Ordinance, which would entail individualized analysis of each such person under the ADA claim. Thus, EWA does not have standing to bring the claims alleged on behalf of its members.

Further, the claims are not ripe for federal review. As a general rule, an issue is not ripe for decision if it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)). In this way, the ripeness doctrine seeks to "prevent the courts, through premature adjudication, from entangling themselves in *abstract disagreements*." *Thomas*, 473 U.S. at 580. In actions for declaratory relief, courts must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Rock Energy Co-op v. Cill. Of Rockton,* 614 F.3d 745, 748 (7th Cir. 2010). For similar reasons, the claims here are not ripe for judicial review. The Amended Complaint does not allege that any of the members have been actually cited and faced prosecution in state court under the Ordinance and, thus, EWA is merely asking this Court to decide hypothetical questions.

Finally, the federal claims in both the Complaint and the Amended Complaint do not have traction no matter how verbose the pleading. EWA has now had two opportunities to cure deficiencies but have failed to do so. Any future amendments would be futile. *See e.g. Airborne Beepers & Video, Inc. v. AT&T Mobility* LLC, 449 F.3d (7th Cir. 2007) (denying leave to amend

9

after multiple opportunities); *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049 (7th Cir. 2019) (same).

## II. The Fourteenth Amendment Vagueness and Procedural Due Process Claim (Count III) Should be Dismissed.

The void for vagueness doctrine stems from "the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012). "As a matter of due process, no one may be required at peril of life, liberty or property to speculate as to the meaning of … statutes." *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976). Yet, "[a] statute need not define every term to survive a vagueness challenge." *Brown v. Chicago Bd. of Education*, 824 F.3d 713, 717 (7th Cir. 2016). Due process does not demand "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Instead, a statute is unconstitutionally vague only if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier,* 520 U.S. 259, 266 (1997).

A vagueness challenge that is not premised on the First Amendment is generally evaluated as an as-applied challenge rather than a facial challenge. *Chapman v. United State*, 500 U.S. 453, 467 (1991). In an as-applied challenge, the court may "leav[e] aside any concerns about facial invalidity" and ask only whether the statute was impermissibly vague with respect to the conduct at hand. *Id*. at 254. Thus, a litigant challenging a statute or ordinance "ordinarily must show that it is vague as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios" *Planned Parenthood of Indiana and Kentucky, Inc. v. Marion County Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021).

None of EWA's members have been prosecuted under the Ordinance. At most, one member received a warning of conduct potentially in violation of the Ordinance, amend. compl. ¶ 192-93,  and one member received a phone call discussing a report of a potential violation of the Ordinance – however, the call was directed to an individual of a different name, amend. compl. ¶ 205. Plaintiffs' claim can only be construed as a pre-enforcement facial challenge. Such challenges are, at times, allowed. *See e.g. Planned Parenthood of Indiana and Kentucky, Inc. v. Marion County Prosecutor*, 7 F.4th 594 (7th Cir. 2021). Yet, even under a facial challenge, EWA's claim must be dismissed.

Facial challenges that do not involve the First Amendment are "limited." *Fuller ex rel. Fuller v. Decatur Pub. Sch. Br. of Educ. Sch. Dist*. 61, 251F.3d 662, 666 (7th Cir. 2001). "The Supreme Court has repeatedly stated that facial invalidation of legislation is disfavored." *United States v. Bonin*, 932 F.3d 523, 534 (7th Cir. 2019), *cert denied*, 140 S.Ct. 960 (2020). "[T]he bar for facially invalidating a statute on vagueness grounds is very high, especially for civil statutes, which receive greater tolerance because the consequences of imprecision are qualitatively less severe than a criminal penalty." *Smiley v. Jenner*, 2026 WL 1074327 *6 (7th Cir. April 21, 2026) (quotations and citations omitted).  The Seventh Circuit recently reiterated that "principles of federalism require us to tread especially carefully when reviewing a state law where the state courts have not had an opportunity to give the law a construction that will produce adequate clarity." *Planned Parenthood*, 7 F.4th at 603 (citations omitted). Those principles stem from Supreme Court jurisprudence:

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.

Case 2:26-cv-00682-WED    Filed 06/15/26    Page 11 of 31    Document 18

> Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008) (citations omitted).

Review of facial challenges outside of the First Amendment focus on whether the legislation has a "core" or whether it "lacks any ascertainable standard for inclusion or exclusion." *United States v. Cook*, 970 F.3d 866,873 (7th Cir. 2020). *See also, Tr. Of Ind. Univ. v. Curry*, 918 F.3d 537, 541 (7th Cir. 2019) ("[A] core of meaning is enough to reject a vagueness challenge, leaving to future adjudication the inevitable questions as to the statutory margin.").

Yet under either a facial or an as applied challenge, EWA's void-for-vagueness claim cannot succeed and this is so no matter how many times they try to replead. The vagueness doctrine requires only a reasonable degree of certainty in the statutory language, *U.S. v. Article of Drug*, 484 F.2d 748, 750 (7th Cir. 1973) and does not demand "[p]erfect clarity and precise guidance." *U.S. v. Williams*, 553 285, 304 (2008).

EWA alleges all of the Ordinance's subsections regarding Prohibited Equipment, Prohibited Operation and Certain Exceptions Excluded are unconstitutionally vague. The Amended Complaint alleges that the Ordinance is void for vagueness because it "contains little to no definitions for any of its terms" and because the ordinance itself does not contain any guidance to law enforcement nor any training provided to law enforcement. Amend. Compl. ¶¶ 166, 171. Specifically, EWA notes that the Ordinance does not contain a definition for "bow high manner" or "artificially bow high manner" Amend. Compl. ¶ 175. EWA also takes issue with the terms "increased" or "enhanced," "brief transition operation" and "fin." Amend. Compl. ¶¶ 186,

188-89. EWA alleges its members do not understand the definitions of these terms because they are able to see over the front of their boats while wake surfing. Amend. Compl. ¶ 177. Without "guidelines, measurements, or other calculable basis for enforcement," EWA contends the Ordinance "giv[es] virtually complete discretion to law enforcement to justify a stop of [its members] boats." Amend. Compl. ¶ 179. EWA also notes that other water activities do not have limits on operating in bow high manner. Amend. Compl. ¶ 181.

Yet the Ordinance itself, coupled with a plain understanding of the words, provides the Ordinance with a "core" which is all that due process requires. For example, EWA argues the terms "bow high manner" and "artificially bow high manner" are vague but then includes multiple photographs within the Complaint of various boats operating bow high – indicating its common understanding of the terms. Amend. Compl. ¶¶ 181-182. Even so, the Ordinance's articulation of the prohibited equipment is clear: no person may use ballast tanks, ballast bags, or fins *to cause* the boat to operate in a bow high manner. Sec. 2(1). Similarly, the prohibited operation is clear: no person may operate in an artificially bow-high manner *that has the effect* of increasing the boat's wake. Sec. 2(2). This language is then defined within the statute, namely: "such prohibited operation <u>shall include</u> wake enhancement by use of ballast tanks, or ballast bags or fins, or continuous operation at transition speed." *Id*.

The remaining complained-of terms are also easily defined. The terms "increased" or "enhanced" are common terms and their common meanings may be applied. *See e.g. Smiley v. Jenner*, 2026 WL 1074327 *4 (7th Cir. April 21, 2026) (applying common meanings to terms undefined in statutory context). "Brief transition period" is defined within the Ordinance as the time "to empty a boat of bilge water." Sec. 2(3). Finally, while EWA complains the term "fin" is undefined in the Ordinance, the Amended Complaint later shows that EWA understands the

meaning of the term *and* the location of such equipment. *See e.g.* Amend. Compl. ¶190 (explaining that "fins" are primarily internal to the boat).

The Ordinance's language regulates the use of wake enhancement equipment when that equipment is employed to increase or to enhance a wake. This is the core meaning, and the plain reading, of the statute. Concerns raised in EWA's Amended Complaint – such as being able to see over the bow, fishing boats and pontoons operating bow-high, and the like– exist only on the margins and do not render the Ordinance unconstitutional. Indeed, at least one court has found similar language to be constitutional. *See e.g. Okon v. Hide-A-Way Lake Club, Inc.*, 2024 WL 5398544, *5 (E.D. Tex. Nov. 20, 2024) ("A reasonable person can determine from the language of the rules whether their conduct is at risk. Anyone who plans to wake surf or artificially generate waves on Hideaway lakes is on notice that such conduct is plainly prohibited."), report and recommendation adopted, 2025 WL 437081 (E.D. Tex. Feb. 7, 2025). Further, the identification of a core of a statute "makes arbitrary or discriminatory enforcement unlikely" such that federal courts "do not assume that [the municipality] will enforce the statute improperly or take no further steps to minimize the dangers of arbitrary enforcement." *Smiley*, 2026 WL 1074327 at *7. Accordingly, under either a facial or as-applied challenge, EWA's vagueness claim must fail.

Finally, EWA's citation to *Kolender v. Lawson*, 461 U.S. 352 (1983), amend. compl. ¶¶ 168-69, does not support an argument that the Ordinance is unconstitutionally vague. *Kolender* involved a California statute that required those suspected of loitering or wandering to provide "credible and reliable" identification that carried "reasonable assurance" of its authenticity" and provided for a "means for later getting in touch with the person who has identified himself." *Id*. at 359. Suspects would violate the statute unless the officer was satisfied that the identification

14

Case 2:26-cv-00682-WED    Filed 06/15/26    Page 14 of 31    Document 18

was reliable. *Id*. The statute in question placed the definitions of the statutory language in the complete discretion of police officers, as opposed to the easily identifiable definitions in the Ordinance at issue here. And the "particular groups deemed to merit … displeasure" (*see* amend. compl. ¶ 169) were those suspected of criminal vagrancy – not lakefront homeowners possessing boat-related investments valued in the millions of dollars.

### III.     The Substantive Due Process Claim Should be Dismissed.

The Amended Complaint maintains a claim for a violation of EWA members' substantive due process rights under the Fourteenth Amendment. While previously, the allegations had only vaguely asserted a violation, the Amended Complaint now alleges the ordinance infringes on the right to travel "around and move on Elkhart Lake." Amend. Compl. ¶ 230.  No matter the amendment, such claim is futile.

First, the right to travel does not extend to wakesurfing across an individual lake.  The right to travel has three components: "(1) "the right of a citizen of one State to enter and leave another state," (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and (3) for those travelers who are permanent residents, the right to be treated like other citizens of that State. *Saenz v. Roe*, 526 489, 500 (1999). "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007).

Of course, there is no constitutionally protected right to travel around one particular lake in whatever manner Plaintiffs so choose. And none of the cases cited by EWA in the Amended Complaint, *Shaheen*, *Laub*, and *Ervin*, offer support for the application of a substantive due process claim rooted in the right to travel via wakesurfing. For example, *Shaheen* dealt with a

writ ne exeat republica – that is, the issuance of a writ restraining an individual who owed over $450,000 in federal taxes, from leaving the jurisdiction of the district court. *U.S. v. Shaheen*, 445 F.2d 6 (7th Cir. 1971). In *U.S. v. Laub*, 385 U.S. 475 (1967), the Supreme Court reviewed whether individuals could be criminally prosecuted for traveling to Cuba, a restricted country, without a valid passport.  And in *Ervin v. State*, 41 Wis.2d 194, 200-01 (1968) the Wisconsin Supreme Court affirmed the invocation of a municipal curfew in the City of Milwaukee in the summer of 1967, when there were frequent riots in cities across the country. None of these cases have any implication on the facts at hand.

Indeed, Plaintiffs admit they have not been prevented from *traveling* anywhere. "For EWA's members' wake boats, their boats do not travel from lake to lake and remain on Elkhart Lake during the open water season."  Amd. Compl. ¶ 287.

Second, the Seventh Circuit has repeatedly rejected substantive due process claims that involve property interests, as opposed to fundamental rights, such as the towing, impounding, and immobilizing of vehicles. *See e.g. Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003); *Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002); *Holstein v. City of Chicago*, 29 F.3d 1145 (7th Cir. 1994). Substantive due process "is not a blanket protection against unjustifiable interferences with property." *Lee*, 330 F.3d at 467. And when a substantive due process challenge does involve only the deprivation of a property interest, a plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation" because a court need engage in rational basis review. *See Doherty v. City of Chicago*, 75 F.3d 318, 323-26 (7th Cir. 1996).

Fatal to EWA's substantive due process claim is that the allegations, at best, represent an alleged interference with Plaintiffs' property rights. EWA alleges "EWA's members, when

16

recreating on and using their respective wake boats for wake surfing and other activities on Elkhart Lake, travel around and move on Elkhart Lake." Amend. Compl. ¶ 230. Further, EWA has not pled an inadequacy of state law remedies nor is there any other viable constitutional claim plead in the Amended Complaint. To the contrary, EWA has affirmatively pled multiple state law claims within the Amended Complaint, and, as explained below, the only other constitutional claim are not viable.

Third, as noted, "substantive due process is not a blanket protection against unjustifiable interferences with property." *Lee v. City of Chicago*, 330 F.3d 456, 461 (7th Cir. 2003)(citations omitted). It is a "modest limitation that prohibits government action when it is random and irrational." *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). Thus, a property owner challenging a land-use regulation must show that the regulation is "arbitrary and unreasonable, bearing no substantial relationship to public health, safety, or welfare. *Id*. at 1000-01. The property owner must also establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation. *Id*., *citing Lee v. City of Chicago*, 300 F.3d 456, 467 (7th Cir.2003).

Even assuming the EWA and its members have a liberty interest in wakesurfing, the substantive due process claim would fail because that interest is not a fundamental liberty interest such as "the freedoms expressly protected by the Bill of Rights." *Hayden ex rel. A.H. v. Greensburg Comty. Sch. Corp*. 743 F.3d 569, 575 (7th Cir. 2014). The curtailment of a liberty interest that is not a fundamental right is subject only to rational basis review. *Id*. "So long as there is any conceivable set of facts that supports [the legislation] it passes muster under the due process clause; put another way, only if [the legislation] is patently arbitrary would it fail." *Id*. at 576 (citations omitted).

Fatal to EWA's substantive due process claim, even after piling on more allegations, is that the Ordinance itself contains a rational basis for its enactment:

> **WHEREAS**, in the interest of public health, safety, and/or welfare, including the public's interest in preserving natural resources, the Village of Elkhart Lake ("Village) has the authority to enact ordinances covering waters within its jurisdiction if the ordinances are not contrary to or inconsistent with Chapter 30, Wis. Stats., and they relate to the equipment, use, or operation of boats or to any activity regulated by Sections. 30.60 to 30.71, Wis. Stats.; and

> **WHEREAS,** Elkhart Lake is a lake with shoreline in the Village; and

> **WHEREAS**, artificially enhanced wakes can cause environmental damage to lakes and lakeshore, including resuspension of sediment adding nutrients to the water and increased risk of algal blooms, turbidity, shoreline erosion, and threats to aquatic life and waterfowl; and

> **WHEREAS,** boats with ballast systems increase the likelihood of aquatic invasive species being introduced and spread on lakes; and

> **WHEREAS,** artificially enhanced wakes can damage shoreline, lake bottom, moored boats, and shoreline structures including docks; and

> **WHEREAS,** operating boats in a stern down manner creates downward prop wash, disturbing the lake bottom far below the wave zone, more than 25 feet below the surface; and

> **WHEREAS,** artificially enhanced wakes can endanger swimmers, anglers, and other watercraft; and

> **WHEREAS,** the use of ballast and wake enhancing fins can cause unsafe operation by causing the bow to rise obscuring vision forward. . . .

Compl. Ex. A.

Attempting to undermine the rational basis set forth within the Ordinance itself, Plaintiffs assert facts that attempt to dispute the Village's rational for enacting the Ordinance. *See e.g.* Amend. Compl. ¶ 246-258. Plaintiffs even suggest their proposed regulation – which they call a "Compromise Ordinance" – would have been adequate. "[T]he fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *United States v. Skrmetti*, 605 U.S. 495, 524 (2025). "Under rational-basis review, a statutory

classification comes to court bearing the strong presumption of validity and the challenger must negative every conceivable basis which might support it." *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015) (citations omitted).

The reasons provided within the Ordinance survive rational basis review. The concerns noted within the Ordinance – damage to the shoreline, lake bottom, shoreline erosion, threats to aquatic life and waterfowl, risk of invasive species being introduced, risk of algal blooms, turbidity, the risk of boat operators driving with obscured vision, and danger to swimmers, anglers, and other watercraft  – are more than sufficient. For such reasons, the Wisconsin legislature has expressly allowed local regulation. *See* Wis. Stats. §§ 30.60 to 30.71. Indeed, elsewhere in their Amended Complaint, EWA acknowledges the truth behind such rational. For example, the Amended Complaint acknowledges the existence of studies on wake boats having an adverse secondary effect on lakes – such as the St. Anthony Falls Study and the Elkhart Lake Study, and Plaintiffs even suggested a "compromise ordinance" that took into account such considerations. Amend. Compl. ¶¶ 79-87, 105, 109 111, 113.

**IV.    The Federal Takings Claims (Count XI and XII and Count XIII and XIV) Should be Dismissed.**

Additionally, the takings claims, which were not substantively revised from the Original Complaint, remain defective. First, the government power at issue–the regulation of activities on a local lake–does not involve the takings power but the police power.  Governmental authorities are allowed to regulate and restrict the use of private property pursuant to the exercise of their police power.  From regulating vehicles on the highways to motorboats on the waters, all such legislative devices flow from the police power.  Police power is an inherent authority of the government and it covers all matters having a reasonable relation to the protection of the public

health, safety, or welfare. *See, e.g, State v. Cole, 2003* WI 112, ¶¶ 22, 32 264 Wis. 2d 520, 545, 665 N.W.2d 328, 340.

"Under our system of government, one of the State's primary ways of preserving the public wealth is restricting the uses individuals can make of their property. While each of us is burdened somewhat by such restrictions, we, in turn, benefit greatly from the restrictions that are placed on others." *Keystone Bituminous Coal Ass 'n v. DeBenedictis,* 480 U.S. 470,491 (1987). Thus, "[i]t has long been settled… injury to property resulting from the exercise of the police power of the state does not necessitate compensation. A state acts under its police power when it regulates in the interest of public safety, convenience, and the general welfare of the public." *Hoffer Properties, LLC v. State, Dep't of Transp.,* 2016 WI 5, ¶ 17, 366 Wis. 2d 372, 392, 874 N.W.2d 533, 542. See also *118th Street Kenosha LLC v. Wisconsin Dept. of Transp.*, 359 Wis.2d 30, 47, 856 N.W.2d 486 (2014) ("Where access to a highway is controlled under the exercise of the police power and reasonable access remains, no compensation is required."); *Nick v. State Highway Comm'n*, 13 Wis. 2d 511, 514, 109 N.W.2d 71 (1961) (relocations of a highway, prohibitions against left and U turns and the like are a propre exercise of police power even if it adversely affects a business).

Here, the Ordinance is a police power regulation for several reasons.  It does not call for or envision any physical seizure, possession or occupation of the boats.  Nor does it interfere with boat ownership and use; such boats can still be used as discussed further below. Additionally, state law allows local regulation of motorboats on the lakes of this state.  That is, a municipality may "enact ordinances applicable on any waters of [Wisconsin] within its jurisdiction if the ordinances are not contrary to or inconsistent with this chapter and if the ordinances relate to the equipment, use, or operation of boats," provided that such an ordinance

is enacted "in the interest of public health, safety, or welfare, including the public's interest in preserving the state's natural resources." Wis. Stat. § 30.77(3)(a).  This exception – allowing local regulation – also covers certain activity and equipment regulated under § 30.60 to 30.71, meaning that many regulatory rules are swept into local government ability to regulate, such as 30.65's traffic rules, 30.66's speed rules, 30.69's water skiing rules, and 30.635's prohibition "[o]n lakes 50 acres or less having public access, motorboats may not be operated in excess of slow-no-wake speed…"  Thus, even if the EWA believes the Ordinance is faulty under state law or other constitutional guardrails, nevertheless it is a police power ordinance rooted in the ability of lake communities to regulate motorboats on their lakes.  Because EWA cannot plead around the police power, any amendment to their takings claims would be futile.

Second, even if this Court were to conclude the Ordinance flowed from the taking power, the legal standards for such a claim are not met by this Complaint.  To plead a per se taking, EWA must plead sufficient facts to show that the regulation at issue either amounted to a "permanent physical invasion of [its] property" or "completely deprive[ed]" it of "all economically beneficial use[s] of their property." *Lingle v. Chevron* U.S.A. Inc., 544 U.S. 528, 538 (2005).

The Amended Complaint does not meet this standard. EWA does not allege a physical invasion of property. And while EWA asserts that the Ordinance deprives them of all or substantially all of the economic value of its members personal property, this conclusion is simply unsupported by the language of the Ordinance. Amend. Compl. ¶ 358.  For example, EWA alleges the ordinance "attempts to ban ballast tanks, ballast bags, or fins," amend. compl.¶ 357, but, as discussed above, the Ordinance merely *regulates the use of such equipment while in a bow-high manner*. The Ordinance does not restrict any boater's ability to use their boats for

non-wakesurfing purposes – such as other water sports, fishing, or cruising – on Elkhart Lake. EWA's added allegation that its members' boats do not contain live wells, amend. compl. ¶ 354, does not prohibit the use of their boats for fishing, as a live well is not a necessary component of fishing, nor does it otherwise alter the analysis. Similarly, the Ordinance does not prohibit any boater from taking their boat to another lake and participating in wakesurfing or other permitted activities there. Finally, that one member of the EWA received a warning notice does not alter the facts such that they would now give rise to a regulatory taking. *See* Amend. Compl. ¶ 358. As noted, EWA's members may still use their boats in all other manners on Elkhart Lake and make take their boats to any other lakes and enjoy those lakes to the extent prohibited by local ordinance. The mere enforcement – through a warning – of the ordinance here does not amount to a prohibition of the EWA's boats on Elkhart Lake.

Nor does the Amended Complaint adequately plead a regulatory taking. The Amended Complaint does not add any additional facts to support a claim for a regulatory taking with the exception of noting that the Ordinance is being "enforced" by way of a warning. *See e.g.* Amend. Compl. ¶ 336. A regulatory taking "forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978). Regulatory takings are "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle*, 544 U.S. at 539. In identifying such takings, courts analyze: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017).

More specifically, to plead a regulatory taking, a plaintiff must "point to some property right – not just some value – lost as a result of the [ordinance]." *RDB Properties, LLC v. City of Berwyn*, 844 Fed.Appx. 878 (7th Cir. 2021) (citations omitted). This must be considered in light of the fact that "government regulation – by definition – involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property." *Andrus v. Allard,* 444 U.S. 51, 65 (1979). The "[me]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602 (1993). Many regulations are not takings even when they prohibit the landowner from making "the most beneficial use of the property"—that is, the most value-producing use. *Penn Cent.*, 438 U.S. at 125.

Additionally, a plaintiff's investment-backed expectations must be objectively reasonable. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013). *See Ranch de Calistoga v. City of Calisoga*, 800 F.3d 1083, 1090 (9th Cir. 2015) ("Just as those who do business in [a] regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end, those who buy into a regulated field…cannot object when the regulation is later imposed.")

Finally, as to the character of the government action, courts follow an analysis that overlaps with whether the regulation is a physical invasion of property. A government action "characterized as a physical invasion by government" is more likely to be a regulatory taking. *Penn Cent.*, 438 U.S. at 124. On the other hand, if the regulation is more fairly characterized as "some public program adjusting the benefits and burdens of economic life to promote the common good[,]" this factor tilts against the regulation being a taking. *Id.*; *see also Connolly v. Pension Benefit Guaranty Corporation*, 475 U.S. 211, 225 (1986) (finding the factor not met

when "the Government does not physically invade or permanently appropriate [the] assets for its own use.").

Under these factors, EWA has not adequately pled a regulatory taking. Reading the Ordinance on its face, it is implausible to suggest that the EWA and/or its members have lost the full value of their boats or equipment. As noted above, the EWA members still have complete access to their boats, may use their boats on Elkhart Lake in all manners not proscribed by the Ordinance, and are free to take their boats to any other lake and use their boats in accordance with the applicable regulations there. That law enforcement has now issued a warning to one of its members regarding the Ordinance does not change this. Additionally, any owner or operator of a boat knows that many state and local laws govern its use and operation, thereby defeating any contention about investment-backed expectations.

Even further, the Wisconsin legislature has expressly delegated regulation of local lakes to local authorities and has entrusted municipalities to regulate the equipment, use or operation of boats and activities on such lakes in the interest of public health, safety, and/or welfare. Wis. Stat. §§ 30.60-30.71. Thus, any contention that the Village would not regulate the use of boats or the activities conducted on Elkhart Lake is unreasonable. As to the third factor weighing in favor of a non-taking, the Complaint does not allege a physical invasion of property. Thus, under the factors articulated in *Murr*, the Complaint fails to assert a regulatory taking.

Finally, Counts XIII and XIV in the Amended Complaint purport to be violations of the Wisconsin Constitution; however, they cite to Section 1983, presumably in error. 42 U.S.C. § 1983 is not a source of rights itself but instead provides a method for vindicating rights otherwise secured under the U.S. Constitution and other federal laws. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989). Similarly, a violation of state law does not state a claim under

§ 1983. *Kasper v. Board of Election Com'rs of the City of Chicago*, 814 F.2d 332, 342 (7th Cir. 1987). Regardless, any such takings claim is futile for the reasons explained above.

## V. The ADA Claim (Count IV) Must be Dismissed.

The Amended Complaint continues to allege the Ordinance violates the ADA because it adversely impacts "some of EWA's individually-identified members and Member A's minor child" in that it is a complete ban on wakesurfing and failed to "create[] accommodations, exceptions, or other carveouts for persons with disabilities." Amend. Compl. ¶¶ 226-27.

Yet, even with the robust addition of new allegations in the Amended Complaint, the ADA claim cannot succeed. Title II of the ADA holds that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiffs alleging a violation of Title II must show (1) they are a qualified individual with a disability; (2) they were denied the benefits of the public entity's services, programs, or activities, or were otherwise subjected to discrimination; and (3) that denial or discrimination was 'by reason of their disability.' *Love v. Westville Correctional Center*, 103 F.3d 588 (1996). EWA correctly notes that municipal regulations may qualify as "services, programs, or activities" subject to Title II. *Wisconsin Community Services Inc. v. City of Milwaukee*, 465 F.3d 737 (2006).

Even under the allegations in the Amended Complaint, EWA lacks standing to bring an ADA claim on behalf of "some" of its members and one its members' minor children (who is not him or herself a member of the EWA). EWA alleges "[t]he EWA's primary purpose of supporting, protecting, and promoting boating activities on the waterways in the Village of Elkhart Lake and the Town of Rhine, Sheboygan County, Wisconsin is broad and encompasses

allowing all persons, including those persons with a disabilities, to enjoy the same boating activities as those who do not have a disability." Amd. Compl. ¶ 224. This is not enough.

Generally, only an individual with a disability can assert a claim under Title II of the ADA. *Murdock v. Washington*, 193 F.3d 510,512 (7th Cir. 1999). Prudential concerns, including the prohibition on a litigant raising another person's legal rights and the requirement that an individual establish an injury within the "zone of interest" of a statutory provision prevent EWA from asserting such claims. *See e.g. Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523-24 (1991). "A plaintiff must belong to the class of persons to whom the statute grants a right to sue." *Food Drug Admin. V. R.J. Reynolds Vapor Co*., 606 U.W. 226, 232 (2025). More specifically, "the plaintiff must establish that the injury he complains of (*his* aggrievement, or adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint. *Air Courier,* 498 U.S at 523-524. In *Air Courtier*, the Supreme Court held that a postal union, who's primary purpose was to protect its union members' jobs, could not challenge a regulation promulgated under the Private Express Statutes that allowed other couriers to handle international mail delivery and would lead to the loss of federal postal jobs. *Id*. at 519-20.

Similar to *Air Courtier*, EWA cannot bring a claim under the ADA on behalf of its members here. As noted in the Amended Complaint, EWA is a group of riparian landowners - it is *not* primarily composed of individuals with disabilities nor is its primary mission to assist those who are disabled. The Amended Complaint does not provide any facts giving rise to an inference that EWA, as an entity, falls within the zone of interest of the ADA. For example, the Amended Complaint does not assert how many of its members are disabled, what their disabilities are, or whether EWA has asserted any other claims regarding disability or participated

Case 2:26-cv-00682-WED    Filed 06/15/26    Page 26 of 31    Document 18

in any other advocacy relating to disability on behalf of its members in the past. The only information asserted in the Amended Complaint with respect to any individual's disability are vague allegations of past injury related to three members and that of the minor child of Member A – who is not a member of the EWA. Such allegations do not establish standing. The EWA is not within the zone of interest of Title II and the asserted ADA claim must be dismissed. *See e.g. Friends of Trumbull v. Chicago Board of Education*, 123 F.Supp. 3d 990, 997 (N.D. Ill. 2015).

Additionally, other courts have held that non-disabled individuals have standing to bring claims only "when they are injured because of the association with a disabled person." *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 1135, 1142 (11th Cir. 2014) (collecting cases); *see also, Hale v. Pace*, 2011 WL 1303369, at *5 (N.D. Ill., March 31, 2011) (allowing discrimination claim when plaintiff was denied service because she was traveling with disabled daughter). Here, the Amended Complaint is completely devoid of any allegations that plausibly infer EWA or its non-disabled member suffered an injury because of their association with "some" members of their group that are disabled and/or with Member A's minor child.

Moreover, the ADA was never intended to cover state or local regulation of motorboat activity on the lakes nor is it a catch-all liability statute. *See, e.g., Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) ("The ADA is an anti-discrimination statute, and Mr. Resel has not alleged that he was discriminated against because he was disabled. A claim for inadequate medical treatment is improper under the ADA."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("the courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners. We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the Americans with Disabilities Act.").

However, even assuming EWA is allowed to bring an ADA claim on behalf of some, but not all, of its members, the Amended Complaint still fails to meet the pleading standards for an ADA claim. For example, the Amended Complaint does not plead which of its individual members constitute qualified individuals with a disability nor does it meet the causation requirement, as there are no particular plausible allegations the Ordinance was adopted "because of" persons disabilities. Both deficiencies are fatal. The Seventh Circuit has "consistently held" that claims under the ADA "require[] proof of causation." *A.H. by Holzmueller v. Illinois High School Association*, 881 F.3d 587, 593 (2018) (citations omitted). To succeed on a Title II claim, a plaintiff must allege that "but for" his disability" he or she would have been able to access the services or benefits desired. *Id.* Here, there are no allegations in the Amended Complaint that *but for* their injuries, the members of EWA would be able to wakesurf on Elkhart Lake. Thus, the ADA claim must also be dismissed on this ground.

Finally, the ADA claim must be dismissed because the Ordinance is common to all persons irrespective of whether they are disabled or not and, because of this, any future amendments to this claim would be futile. When an entity does not provide the program, service, or activity complained of, then the entity has no duty to provide an accommodation for disabled persons. *Irby v. Sumnicht*, 683 F.Supp.2d 913, 917 (W.D. Wis. 2010). "This makes sense because the goal of the ADA is to provide equal access to individuals with disabilities to opportunities and benefits, not to provide privileges withheld from everyone else." *Id.* (emphasis in original*); see also EEOC v. Humiston-Keeling, Inc*., 227 F.3d 1024, 1028 (7th Cir. 2000) ("[T]he Americans with Disabilities Act is not a mandatory preference act."). Because the Ordinance prohibits certain boating conduct uniformly across all boaters, the Village is under no obligation

to create an accommodation that would allow EWA's disabled members to have a privilege that other boaters do not have.

**VI.    Claims against the Village cannot proceed under *Monell* nor as against the Individual Defendants for lack of personal involvement and absolute immunity**.

Any constitutional claim under Count III against the Village cannot proceed. There is no underlying constitutional violation, and "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978). "If a person has suffered no constitutional injury at the hands of [an official], the fact that the departmental regulations might have *authorized* [unconstitutional conduct] is quite beside the point." *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir.2010) ( "[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.").

Moreover, the Individual Defendants should be dismissed, even after this repleading. Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017). The Counts do not plausibly plead personal involvement. True, scattered throughout the Amended Complaint are criticisms of the elected trustees' votes but that is neither sufficient personal involvement nor a way around absolute immunity for their actions taken in their legislative capacity. See *Bogan v. Scott-Harris*, 523 U.S. 44, 53-54 (1998); *Rateree v. Rockett,* 852 F.2d 946, 949 (7th Cir. 1988). Elected officials are shielded from liability for "legitimate legislative activity," which includes acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation …." *Gravel v. United States*, 408 U.S. 606, 625 (1972); see *Bagley v.*

*Blagojevich*, 646 F.3d 378, 385 (7th Cir. 2011) ("Introducing, voting, and signing into law a budget were 'formally legislative' actions even though an executive official (the mayor) introduced and signed the budget.").

**VII.     This Court Should Decline to Exercise Supplemental Jurisdiction.**

Because the Amended Complaint fails to state a claim under federal law, this Court need not retain jurisdiction over any pendent state claims and may dismiss them without prejudice to refiling in state court.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction…."); *Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011) ("[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

<u>**CONCLUSION**</u>

For the reasons set forth above, the Defendants respectfully request that the Court grant this Motion to Dismiss Plaintiffs' Amended Complaint, dismiss all federal claims, and relinquish jurisdiction as to the remaining state law claims.

Dated this 15th day of June, 2026

> **MUNICIPAL LAW & LITIGATION GROUP, S.C.**
>
> Attorneys for Defendants
>
> By:     /s/ Electronically signed by Remzy D. Bitar
> REMZY D. BITAR
> State Bar No: 1038340
> SAMANTHA R. SCHMID
> State Bar No. 1096315
>
> 730 N. Grand Avenue
> Waukesha, WI 53186

30

O: (262) 548-1340
F:  (262) 548-9211
E: rbitar@ammr.net
sschmid@ammr.net